**SEA CONTAINERS LTD., Plaintiff,**

v.

**STENA AB, et al., Defendants.**

**STENA FINANCE B.V.,
Counterclaimant,**

v.

**SEA CONTAINERS LTD., et al.,
Counterclaim Defendants.**

**Civ. A. No. 89–0752 JGP.**

United States District Court,
District of Columbia.

July 26, 1989.

Paul Friedman, Washington, D.C., for plaintiff.

Richard Brusca, Washington, D.C., for defendants.

## MEMORANDUM ORDER

JOHN GARRETT PENN, District Judge.

This matter comes back before the Court on Sea Containers Ltd.'s ("Sea Containers") motion for a preliminary injunction. The Court heard arguments on the motion on July 24, 1989.

### I.

This case was initially filed on March 22, 1989. Sea Containers states that "when it initially instituted this action on March 22, 1989, [it] alleged that in filings with the Securities and Exchange Commission ("SEC") Dan Sten Olsson, Sten Allan Olsson and three of the corporations they own and control had misrepresented the true purpose behind their purchase of a large block of Sea Containers common stock." Sea Containers' First Amended and Supplemental Complaint ("Sea Containers' Amended Complaint") par. 2. Sea Containers further states that "[s]ubsequent events have borne out the allegations of the initial complaint, and have given rise to additional securities laws claims against the Olssons and others acting in concert with them." *Id.*

On May 26, 1989, Temple Holdings Ltd. ("Temple")[1] commenced its $50 all cash tender offer for all shares of Sea Containers (the "Offer"). On June 22, 1989, Sea Containers sought leave to file an amended complaint.[2] Sea Containers asserts that this action arises under §§ 13(d), 14(d) and 14(e) of the Securities Exchange Act of 1934 (15 U.S.C. §§ 78m(d), 78n(d) and 78n(e)) and the rules and regulations promulgated thereunder by the SEC. Sea Containers' Amended Complaint par. 11. Temple has filed a Supplement to the Offer to Purchase dated July 14, 1989 (the "Supplement"); which addresses many of Sea Containers' claims. In the present motion, Sea Containers seeks a preliminary and permanent injunction to cure the alleged false and material disclosure with respect to the Offer in violation of the securities laws.

### II.

In order to be entitled to injunctive relief, a movant must demonstrate (1) that it has a strong likelihood of success on the merits, (2) that it will suffer irreparable injury if injunctive relief is denied, (3) that other interested parties will not suffer substantial harm if injunctive relief is granted, and (4) that the public interest favors the granting of injunctive relief or, at least, that the granting of injunctive relief is not adverse to the public interest. *See Washington*

---

1. Temple is a corporation owned in part by Stena and Tiphook plc.

2. Sea Containers withdrew its initial motion for leave to file an amended complaint and substituted a similar motion on June 29, 1989. This Court granted the substituted motion. *See* Order filed July 11, 1989. Reference to the Amended Complaint refers to the Complaint filed on June 29, 1989.

*Metropolitan Area Transit Commission v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (1977). In addition, "[t]he necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other factors." *Id.* In suits alleging violations of the disclosure requirements of section 13(d), an injunction may not issue in the absence of a showing of irreparable injury. *Financial General Bankshares, Inc. v. Lance,* Fed.Sec.L.Rep. (CCH) par. 96,403 at 93,424, 1978 WL 1082 (D.D.C. 1978), citing *Rondeau v. Mosinee Paper Co.,* 422 U.S. 49, 95 S.Ct. 2069, 45 L.Ed.2d 12 (1975).

This Court has noted that its role is to assure that public shareholders who are confronted by a cash tender offer for their stock, or when there are shifts in corporate control, will not be required to respond without adequate information regarding the qualifications and intentions of the offering party. *See* Memorandum at 5, filed May 8, 1989 (citing *Rondeau v. Mosinee Paper Co., supra*). In reviewing a claim under §§ 14(d) and 14(e), the Court must determine whether there are misstatements and omissions in connection with the tender offer, and if so, whether they are material.

The Supreme Court has articulated the general standard of materiality under the federal securities laws:

> An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote ... It does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote. What the standard does contemplate is a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.

*Riggs Nat'l Bank v. Allbritton,* 516 F.Supp. 164, 172 (D.D.C.1981) (quoting *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976)).

### III.

The issues raised in the motion for preliminary injunction present the Court with the following questions [3]: (1) Whether Sten Allan Olsson and Dan Sten Olsson are bidders under SEC Rule 14d–1(b)(1), (2) if the Olssons are bidders, are they required to make financial disclosures, (3) whether there has been adequate disclosure regarding the criminal convictions of Sten Allan Olsson, (4) whether Temple has made a material misstatement with respect to the value of Sea Containers' shares, (5) whether Temple has made a material misstatement regarding the financing for the Offer, (6) whether Temple has misled the shareholders with respect to deadlines for the Offer, and (7) whether Temple has made a material misstatement with respect to "Bye–Law 49".

### A.

Sea Containers contends that Sten Allan Olsson and Dan Sten Olsson are bidders under SEC Rule 14d–1(b)(1). A "bidder," under SEC Rule 14d–1(b)(1), "means any person who makes a tender offer or on whose behalf a tender offer is made." 17 C.F.R. § 240.14d–1(b)(1) (1988). Under § 14(d):

> When two or more persons act as a partnership, limited partnership, syndicate or other group for the purpose of acquiring, holding, or disposing of securities of an issue, such syndicate or group shall be deemed a "person" for purpose of this subsection.

---

**3.** In a Supplement to the Offer to Purchase dated July 14, 1989, Temple has made additional disclosures. Sea Containers concedes that the Supplement corrects many of the false and misleading statements and disclosures of material facts previously omitted from the Schedule 14D–1. Sea Containers' Reply Memorandum In Support of Its Motion for Preliminary Injunction at 4 ("Sea Containers' Reply").

15 U.S.C. § 78n(d)(2). There is no uniform interpretation of the scope of SEC Rule 14d–1(b)(1).[4]

Sea Containers urges the Court to take the approach articulated by the First Circuit. Sea Containers' Reply at 6. (citing *MAI Basic Four, Inc. v. Prime Computer, Inc.*, 871 F.2d 212) The First Circuit noted:

> We suspect that any bright-line test, separating those who are subject to the Williams Act from those who are not, would merely invite the ingenuity of resourceful counsel to place their client formally on the desired side of the line, whatever the underlying reality may be.

*MAI Basic Four, Inc.*, 871 F.2d at 221 (1st Cir.1989). This Court recognizes the concern raised by the First Circuit; however, the Court is not inclined to find that a "person" is a "bidder" absent clear evidence to support a finding.

Sea Containers states "that the Olssons may not presently and personally be 'directly' providing financing for the Offer does not automatically exempt them from being bidders." Sea Containers' Reply at 7. Further, Sea Containers suggest that "[o]ne may well ask why so critical a determination should stand or fall on whether two individuals—a father and son—finance a bid by writing personal checks or by drawing funds from a corporation wholly-owned and created by the very same pair." *Id.* Sea Containers' argument suggest that the Court should ignore the corporate structure of the "Stena" corporations. However, Sea Containers has not convinced the Court that the Olssons' action should constitute them as "bidders".

The Court finds with respect to Sea Containers' claim that the Olssons are bidders

under SEC Rule 14d–1(b)(1), that Sea Containers has not demonstrated that it has a strong likelihood of success on the merits. Accordingly, the Court finds that with respect to this claim, Sea Containers is not entitled to a preliminary injunction.

**B.**

Sea Containers contends that "[t]he conclusion that the Olssons are bidders dictates they must comply with the disclosure obligations for bidders as set forth on Schedule 14D–1." Sea Containers' Memorandum In Support of Its Motion for Preliminary Injunction at 13 ("Sea Containers' Memorandum) (citing 17 C.F.R. § 240.14d–100). Because the Court has concluded that Sea Containers has not established that the Olssons are bidders, the Court similarly concludes that the Olssons are not required to make financial disclosures.

**C.**

■ Sea Containers seeks additional disclosures regarding the criminal convictions of Sten Allan Olsson.[5] Sea Containers states:

> In 1960–61 Sten Allan Olsson was tried and convicted in the Gothenburg criminal court for a second time. He was found guilty on 23 counts of felonious outward shipment of goods, two counts of false declarations, one count of incitement to false declaration, and one count of being an accessory to the felonious outward shipment of goods.

Sea Containers' Memorandum at 19. Further, Sea Containers argues that "[d]espite the passage of time since Sten Allan Ols-

**4.** *Compare MAI Basic Four, Inc. v. Prime Computer, Inc.*, 871 F.2d 212 (1st Cir.1989) (Court held that a firm was a "bidder" within disclosure requirements of Securities Exchange Act) *with City Capital Associates Ltd. v. Interco Inc.*, 860 F.2d 60 (3rd Cir.1988) (Court held that the financial advisor and deal manager of the tender offer was not a "bidder" subject to Williams Act financial disclosure regulations.)

**5.** On July 25, 1989, Sea Containers filed a Supplemental Memorandum in further support of Sea Containers Ltd.'s Motion for Preliminary Injunction—particularly, the Memorandum ad-

dressed Sten Allan Olsson. The material was filed under seal pursuant to a Stipulation Protective Order. The Court will not accept the Supplemental Memorandum for consideration. The Court set forth a schedule for filing material regarding the preliminary injunction. *See* Order filed July 12, 1989. The parties were given an additional opportunity to submit arguments and material during the hearing. Upon the close of the hearing, the record regarding the preliminary injunction was closed. Accordingly, the filing of the Supplemental Memorandum is untimely.

son's conviction, this is very material information which shareholders need to know in order to make informed decisions." *Id.* at 20.

Stena argues that Temple had no obligation to disclose such information; noting that the convictions are "at least twenty-eight years old". Stena's Memorandum In Opposition to Motion for Preliminary Injunction at 25. ("Stena's Opp."). Stena notes that Item 2(e) of Schedule 14D–1 requires a tender offer to disclose only:

> Whether or not, during the last 5 years, such persons have been convicted in a criminal proceeding (excluding traffic violations or similar misdemeanors) and, if so, give the dates, nature of conviction, name and location of court, and penalty imposed or other disposition of the case.

*Id.* (citing 17 C.F.R. § 240.14d–100). Stena states that "[t]he reason underlying this limitation is obvious: the materiality of anything older that 5 years has been adjudged by the SEC to be *de minimis. Id.* at 26. Further, Stena states that the matter has been fully disclosed in the Supplement. *Id.* at 28, Nannes Dec. Ex. A at 12.

Sea Containers contends that "Item 2(e) merely illustrates those convictions which are *presumed* material—it does not circumscribe the universe of materiality. Sea Containers' Reply at 12 (emphasis in the original). This Court agrees. However, the Court concludes that any omission regarding Mr. Olsson's conviction is not material. The Court notes that the conviction is twenty-eight years old. In addition, the Supplement includes information regarding Mr. Olsson's conviction, as well as, the allegations raised in Sea Containers' Amended Complaint. *See* Nannes Dec. Ex. A at 12. The Court concludes that Temple has made an adequate disclosure regarding Mr. Olsson's conviction.

### D.

■ Sea Containers contends that Temple has disseminated a "sham valuation" of $56 per share for Sea Containers' shares. Sea Containers notes that the $56 value is more than $14 below the market price of Sea Containers stock before word of the "sham valuation" reached the market. Sea Containers' Memorandum at 23. According to Sea Containers, the correct analysis of the value of the shares would result in a per share valuation of approximately $69 per share. *Id.* at 25.

In the Supplement, Temple further supported its valuation of the shares. Nannes Dec. Ex. A at 18. However, the Supplement also refers to the dispute with Sea Containers over the correct valuation of the shares. *Id.* The Court's concern is that shareholders are fully apprised in order to make informed decisions. The shareholders presently have the benefit of the valuation analyzed by Sea Containers and by Temple. With respect to Temple's disclosure obligation, the Court finds that the Supplement, since it includes Sea Containers' valuation, adequately discloses information regarding the value of the shares.

### E.

■ Further, Sea Containers contends that Temple's Schedule 14D–1 and Amendments thereto are false and misleading with respect to the sources and contingent nature of the financing for the Offer. SEC Rule 14d–100, Item 4, requires disclosure of the source and amount of funds or other consideration for which the tender offer is being made. 17 C.F.R. § 240.14d–100. Notwithstanding the Supplement, Sea Containers contends that the disclosure regarding the financing of the Offer is inadequate. Though Sea Containers has listed facts or contingencies that it feels are omitted, Sea Containers has not demonstrated that these omissions are material. Further, in the Supplement, Temple discloses Sea Containers' claims of inadequate disclosure. Nannes Dec. Ex. A at 15.

The Court finds with respect to the claim that Temple has failed to disclose the sources and contingent nature of the financing for the Offer, that Sea Containers has failed to demonstrate a likelihood of success on the merits. In addition, since Temple has disclosed Sea Containers' claims on this issue, the shareholders have adequate information.

### F.

 Sea Containers argues that Temple's Schedule 14D–1 continues to mislead shareholders with respect to deadlines for the Offer. Sea Containers points to the agreement with Tiphook plc and Morgan Grenfell—Tiphook's underwriter—to point out that, per the underwriting agreement, that the Offer has to be extended. Sea Containers' Memorandum at 41–43. Sea Containers argues that the omission that the Offer has to be extended is a material omission. The Court disagrees.

The Offer states that the "Offer and Withdrawal Rights Will Expire At 12:00 Midnight New York City Time, On Friday, June 23, 1989, *Unless Extended.*" Dan Sten Olsson's Dec. Ex. A, cover page (emphasis the Court's). The Offer indicates numerous conditions upon which the Offer is made. *Id.* Further, this Offer is unique in that there is pending litigation in this Court, as well as, in Bermuda. The shareholders are fully apprised of the pending litigation. The shareholders can anticipate that for numerous reasons the Offer may need to be extended. Accordingly, the Court finds that any omission by Tiphook plc regarding the effect that the underwriting agreement will have on whether or not to extend the Offer is not material.

### G.

 Lastly, Sea Containers contends that Temple's disclosure with respect to Bye–Law 49 continues to be incomplete and misleading. Bye–Law 49 provides that, in addition to any other required vote, a Business Combination between the Company[6] and a Related Person must be approved by 90% of the Voting Shares. Paul Friedman's Dec. Ex. 9. Notwithstanding the Supplement, Sea Containers contends that Bye-Law 49 would be a potentially greater impediment to consummation of the Offer than disclosed in the Offer. Sea Containers' Reply at 27.

The Offer does indicate the potential effects of Bye–Law 49 on the Offer. Dan Sten Olsson's Dec. Ex. A at 34. Further, the Supplement discloses the allegations

**6.** The Company refers to Sea Containers Ltd.

Sea Containers has made on this issue. Nannes' Dec. Ex. A at 13. The Court finds that Temple's disclosure, which includes Sea Containers' allegation, provides the shareholder with adequate disclosure.

### IV.

For the reasons discussed above, the Court concludes that Sea Containers' motion for a preliminary injunction should be denied.

It is hereby

ORDERED that Sea Containers' motion for a preliminary injunction is denied.